# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| FOUNDERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12-cv-01315 |
| v. | ) | JUDGE HAYNES |
| | ) | |
| BENTLEY ENTERTAINMENT, LLC d/b/a | ) | |
| BENTLEY'S HOUSE OF SOUL, REGGIE | ) | |
| RIDLEY, DHARMESH PATEL, KAREN S. | ) | |
| BATES-THOMPSON, individually, and as | ) | |
| ADMINISTRATRIX, of the ESTATE OF | ) | |
| BRIAN A. AMOS, JR., and BRIAN A. AMOS, | ) | |
| SR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

Plaintiff, Founders Insurance Company ("Founders"), an Illinois company with its

principal place of business in Illinois, filed this action under the federal diversity jurisdiction

statute, 28 U.S.C. §1332, against Defendants: Bentley Entertainment, LLC, d/b/a Bentley's

House of Soul, a Tennessee corporation; Reggie Ridley; Dharmesh Patel[1]; Karen S. Bates-

Thompson, individually, and as administratrix of the Estate of Brian A. Amos, Jr.; and Brian A.

Amos, Sr.[2], all of whom are Tennessee citizens. (Docket Entry No. 1). Plaintiff seeks declaratory

relief under 28 U.S.C. §§ 2201 and 2202 to resolve whether the insurance policy issued by

---

[1]Defendants Bentley Entertainment, LLC, d/b/a Bentley's House of Soul, Reggie Ridley, and Dharmesh Patel are hereinafter referred to collectively as "Bentley Defendants."

[2]Defendant Karen S. Bates-Thompson, individually, and as administratrix, of the Estate of Brian A. Amos, Jr., and Brian A. Amos, Sr. is hereinafter referred to singularly as "Defendant Bates-Thompson."

Plaintiff Founders to the Bentley Defendants applies to claims arising out of Defendant Bates-Thompson's state court action against the Bentley Defendants. In response, the Bentley Defendants filed an answer with affirmative defenses and counter-complaint seeking declaratory judgment that the Founders insurance policy covers the underlying state court action. (Docket Entry No. 7, at 5-6, 18-19).

Before the Court are Plaintiff's motion for judgment on the pleadings (Docket Entry No. 11) and Plaintiff's' motion to strike the Bentley affirmative defenses as insufficient as a matter of law (Docket Entry No. 13).

In its motion for judgment on the pleadings, Plaintiff asserts that for this motion, the provisions of insurance policy and the factual; allegations in underlying state court first amended complaint that are attached as exhibits are undisputed. (Docket Entry No. 12, Memorandum at 2). Plaintiff Founders asserts that for this reason, the Court should grant judgment and determine that Plaintiff is not required to indemnify or defend the state court action on behalf of the Bentley Defendants because its policy expressly excludes the intentional tort claims in the state court action against the Bentley Defendants. Id. at 12.

Plaintiff's motion to strike contends that the Bentley Defendants' affirmative defenses are legally insufficient as "[t]here can be no reasonable argument as to whether the Complaint . . . states a claim for relief"; "[t]he liquor liability coverage provided by the policy of insurance . . . is not pertinent to this dispute" because the state court complaint does not contain any allegations about liquor; and "[t]he concurrent cause doctrine would only serve to require the insurer to provide coverage if the concurrent cause created liability for the insured."(Docket Entry No. 14, Memorandum at 3-4). As to Bentley Defendants' claims of concurrent cause,

2

Plaintiff contends that the alleged negligence of others who are not covered by its policy cannot create coverage under a concurrent cause theory. Plaintiff also argues that "if Bentley, Ridley, and Patel are somehow legally responsible for the negligence of the other state court defendants, the Assault and Battery exclusion applies to exclude coverage." Id. at 10.

Bentley Defendants' responses to both motions (Docket Entry Nos. 16-17) contend, in sum: (1) that the motion for judgment on the pleadings should be denied because of ambiguities in the pleadings, (2) that the negligence of the other defendants constitutes a concurrent cause to bar exclusion of this incident; (3) that Founders's "[c]omplaint does not refer to the Commercial Liquor License Insurance provisions that may require Founders to defend and indemnify the Bentley Defendants; (4) that the Founders policy terms on assault and/or battery are ambiguous because those terms are not defined in the insurance policy; and (5) ambiguity in the shooter's intent exists in the state court action affecting whether the injuries were caused by an assault and/or battery. (Docket Entry No. 16, Response at 3, 4-6 and 8). Bentley Defendants also assert the negligence of the other Defendants as a concurrent cause to which the exclusions in Founders's policy does not apply because the Bentley Defendants are not legally responsible for those defendants. Id. at 6-8. The Bentley Defendants incorporate these arguments in response to Plaintiff's motion to strike. (Docket Entry No. 17, Response at 1-2).

Plaintiff responds that the Bates-Thompson state court action is unambiguous given the state court complaint's allegations are that an unidentified John Doe committed the tort of assault against the decedent after the unidentified John Doe provoked the incident and shot him, resulting in decedent's death. (Docket Entry No. 18, Reply at 2). Plaintiff further contends that the concurrent cause doctrine is inapplicable because "the concurrent cause doctrine does not

3

create a duty to defend and indemnify an insured when a theory of liability is asserted against an entity unrelated to the insurance policy." Id. at 4. Finally, Plaintiff contends that the liquor liability coverage is not triggered given the lack of allegation in the state court complaint about selling alcohol as a cause of the events, and in any event, such activity is excluded by the assault and battery exclusion in the liquor coverage. Id. at 5.

The state court plaintiffs filed a first amended complaint that contains virtually the same factual allegations, but adds Allegations about the Bentley Defendants' serving liquor at their establishment as a cause of the decedent's death. (Docket Entry No. 21-1).

For the reasons set forth below, the Court concludes that under the applicable law, the gravamen of the state action controls whether the Founders policy creates a contractual duty for Founders to defend that state court action. The factual core of the State court action is that a John Doe Defendant instigated a dispute with the deceased and left the building to secure a weapon that he used to kill the deceased. The state court action expressly refers to the shooting as a "tort[i]ous assault" for which Plaintiffs seek punitive damages. Founders' policy with the Bentley Defendants expressly excludes coverage of claims for bodily injury caused by an assault and excludes any claims for punitive damages. In light of these circumstances, the Court concludes that Plaintiff does not owe a contractual duty to defend the Bentley Defendants in the State court action. Thus, Plaintiff's motion for judgment on the pleadings should be granted. This conclusion renders moot any consideration of Plaintiff's motion to strike.

## A. Review of the State Court Action

### 1. The Original Complaint

4

Karen S. Bates, individually, and as administratrix of the estate of Brian A. Amos, Jr., and Brian A. Amos, Sr., filed an action in the Circuit Court for Davidson County, Tennessee against Defendants: Reggie Ridley, Bentley's House of Soul, Dharmesh Patel, Bentley Entertainment, LLC, Ronald Moseley, One World Protection Svc., James Guevara, Mark Snyder, AAA 24 Hour Bail Bond, Inc. d/b/a Eagle Eye Security, Marcus Fitzgerald (a.k.a. Tha City Paper), Felonious Entertainment, LLC, and Unidentified John Doe. (Docket Entry No. 1-1, State Complaint ¶¶ 1-13). In a word, Founders is not a party in the state court actions.

The factual core of Plaintiffs' claims in the state court action is that on October 9, 2011:

> At about 3:54 a.m. upon information and belief, Brian A. Amos, Jr., was on the dance floor , whereby lethal shots were fired at Mr. Amos presumably by the Defendant, Unidentified John Doe. It is alleged that the Defendant, Unidentified John Doe instigated and provoked said incident . It is further alleged that all Defendants knew or should have known that by the nature of the music being played by the Defendant, Marcus Fitzgerald, rapper, a/k/a 'Tha City Paper' that it was foreseeable that some patrons in the crowd could possess weapons. It is further alleged the Defendants were and should have been aware Defendant, Unidentified John Doe, left the building to retrieve a deadly weapon and reentered the building.

Id. at ¶ 16. The state court complaint also alleges that this shooting was "a tort[i]uous assault" and that: "As a direct and proximate[] result of the negligent and /or intentional acts of the Defendants, the Plaintiffs would not have been deprived of the companionship and support of their son. Id. at ¶ ¶ 26, 29. The state court Plaintiffs also seek punitive damages. Id. at 13.

From these factual allegations, the state court Plaintiffs assert various negligence claims against the Bentley Defendants for their alleged failures to hire adequate and effective security personnel, to take appropriate measures to prevent deadly weapons from entering the establishment, to ensure public safety in the establishment, or otherwise to protect the patron, decedent Brian A. Amos, Jr. from his wrongful death. Id.. at ¶¶ 19-28. The state court plaintiffs

allege that "because the acts by [d]efendant, Unidentified John Doe, w[ere] reasonably foreseeable to all other named defendants . . ." they are "jointly and severally liable . . . for the fatal injuries and ultimately the wrongful death of Brian A. Amos, Jr. Id. at ¶ 31.

The Bates-Thompson plaintiffs in the state court action moved to amend their complaint to include an allegation regarding liquor liability, but the state court denied that motion. (Docket Entry No. 19, Notice at 1). Yet, subsequent filings in this action, reflect that on July 1, 2013, the Bates Thompson plaintiffs filed a first amended complaint that is analyzed below.(Docket Entry No. 21-1).

## 2. The First Amended Complaint

In its supplemental papers, Plaintiff identifies the following paragraphs of the Bates-Thompson first amended complaint as relevant to the coverage issues in this action:

> It is further alleged that Bentley's House of Soul was an establishment license (sic) within the State of Tennessee to sell, serve, and/or furnish alcoholic beverages. (Docket Entry No.21-1 at ¶ 15);
>
> ... [L]ethal shots were fired at Mr. Amos presumably by the unknown Defendant, Unidentified John Doe. It is alleged that said Defendant, Unidentified John Doe instigated and provoked said incident and upon belief, it is alleged said Defendant was intoxicated...It is further alleged that by Bentley's House of Soul selling alcoholic beverages to patrons on the night of the incident, it was foreseeable that an intoxicated patron could instigate an incident.
> Id. at ¶ 16;
>
>        *            *          *
>
> It is alleged that Defendant, Reggie Ridley, individually and as owner/operator of Bentley's House of Soul, as well as Dharmesh Patel, individually, and as owner/operator of Bentley Entertainment, LLC, d/b/a Bentley's House of Soul, with an understanding that their establishment sold alcoholic beverages, failed to employ effective security personnel such that thorough and detailed security checks were not implemented. . . .
> Id. at ¶ 18;
>
> It is alleged that, Reggie Ridley, individually, and as owner/operator of Bentley's House of Soul; Dharmesh Patel, individually, and as owner/operator of Bentley Entertainment, LLC,

d/b/a Bentley's House of Soul...were thought to be responsible for hiring and ensuring patrons safety with two security companies...It is alleged that said Defendants failed to investigate that Defendant security company, One World Protection Svc. was not a licensed business, and that Defendant security company AAA 24 hour Bail Bonds, Inc d/b/a Eagle Eye Security had an expired business license at the time of the incident. . . .
Id. at ¶ 19;

It is alleged, the Defendant, Reggie Ridley, individually, or as owner of Bentley's House of Soul; Dharmesh Patel, individually, or as owner and operator of Bentley Entertainment, LLC d/b/a Bentley's House of Soul...had a duty to ensure licensed and bonded security personnel were hired for events such as the one involving Defendant, Marcus Fitzgerald...It is further alleged this failure to take appropriate steps in the hiring of the security personnel with a major causative factor of the shooting. . . .
Id. at ¶ 20;

That Defendants, Reggie Ridley, individually, or as owner/operator of Bentley's House of Soul and Dharmesh Patel, individually, or as owner of Bentley Entertainment, LLC d/b/a Bentley's House of Soul, as an establishment that sells alcoholic beverages...had a duty to ensure that security who were adequately trained to handle the type of crowd that this entertainer attracts, including a crowd of possible (sic) intoxicated patrons . . . .
Id. at ¶ 21;

That Defendants, Reggie Ridley, individually, and as owner/operator of Bentley's House of Soul; Dharmesh Patel, individually, and as owner/operator of Bentley Entertainment, LLC, d/b/a Bentley's House of Soul as an establishment which sold alcoholic beverages...were negligent in failing to hire or to ensure the hire of adequate security personnel . . . .
Id. at ¶ 22;

\*                          \*                          \*

The Defendant, Reggie Ridley, individually, as owner/operator of Bentley's House of Soul, and Dharmesh Patel, individually, and as Owner/Operator of Bentley Entertainment, LLC d/b/a Bentley's House of Soul, had a duty to protect all patrons entering the establishment, which sold alcoholic beverages...the negligent hiring of security by Defendants, Reggie Ridley, individually, and as owner/operator of Bentley's House of Soul, and Dharmesh Patel, individually, and as owner/operator of Bentley Entertainment, LLC d/b/a Bentley's House of Soul which sold alcoholic beverages...and the lack of adequate security measures . . . .
Id. at ¶ 25;

...It is averred that all named Defendants are jointly and severally liable for the death caused by Defendant, Unidentified John Doe, because all Defendants, by breaching their duties to prevent the foreseeable acts of Defendant, Unidentified John Doe, upon belief, an intoxicated patron, as he shot Brian A. Amos, Jr., proximately caused said wrongful death.
Id. at ¶ 26;

The Defendants, Reggie Ridley, individually and as owner/operator of Bentley's House of Soul and Dharmesh Patel, individually and as owner/operator of Bentley Entertainment, LLC, d/b/a Bentley's House of Soul, an establishment which sold alcohol to patrons, had a duty to protect their patrons when said patrons entered their establishment and on the premises of said establishment and not hire security personnel who are not adequately trained to deal with unruly, belligerent and intoxicated patrons. . . .

Id. at ¶ 27;

That all named Defendants, jointly and severally, failed to adequately hire effective security personnel skilled at handling violent and/or intoxicated patrons . . . .

Id. at ¶ 28.

(Docket Entry No 21-1 at 5-13).

Of the allegations in the first amended complaint in ths state court action, the Bentley Defendants cites the Bates-Thompson plaintiffs' allegations in paragraph 16, that fail to allege that the Unidentified John Doe intentionally shot the deceased. Paragraph 16 of the Bates Thompson plaintiffs' first amended complaint in the state action reads as follows:

At about 3:54 a.m., upon information and belief, Brian A. Amos, Jr., was on the dance floor, whereby lethal shots were fired at Mr. Amos presumably by the unknown Defendant, Unidentified John Doe. It is alleged that said Defendant, Unidentified John Doe instigated and provoked said incident **and upon belief, it is alleged said Defendant was intoxicated**. It is further alleged that all Defendants knew or should have known that by the nature of music being played by the Defendant, Marcus Fitzgerald, rapper, a/k/a "Tha City Paper", that it was foreseeable that some patrons in the crowd could possess weapons. It is further alleged the Defendants were and should have been aware Defendant, Unidentified John Doe, left the building to retrieve a deadly weapon and reentered the building. **It is further alleged that by Bentley's House of Soul selling alcoholic beverages to patrons on the night of the incident, it was foreseeable that an intoxicated person could instigate an incident**.

(Docket Entry No. 21-1 at ¶ 16) (emphasis added)..

From the Court's comparison, the emboldened portions of paragraph 16 reflect the additions to the former paragraph 16 in the original state court complaint. In addition, the Bates Thompson plaintiffs' first amended complaint again alleges that this shooting was "a tort[i]uous assault" and that "[a]s a direct and proximate[] result of the negligent and/or intentional acts of the Defendants," the the Bates Thompson plaintiffs would not have been deprived of the companionship and support

8

of their deceased son. Id. at ¶ ¶ 26, 29. The state court plaintiffs also seek punitive damages, not to exceed $10 million. Id. at 16.

## B. The Federal Action

Plaintiff Founders's complaint in this action was filed after the state court action and attaches a copy of the state court complaint and its insurance policy as exhibits to its complaint. Founders's complaint asserts that the state court action alleges that the insured Bentley Defendants are liable for the decedent, Brian A. Amos, Jr.'s death through their negligence in failing to hire adequate security personnel to protect their patrons. (Docket Entry No. 1-1, State Complaint at ¶¶ 18-22). Defendants admit some of these allegations and deny others, but assert in their response that the Bates complaint "speaks for itself." (Docket Entry No. 7, Answer and Counterclaim at ¶ 14-15). Plaintiff also filed the state court plaintiffs' first amended complaint. (Docket Entry No. 21-1).

In their response, Bentley Defendants admit the authenticity of the Founders insurance policy that Founders issued to the Bentley Defendants effective June 2, 2011-June 2, 2012. This insurance policy states coverages as follows:

SECTION 1 - COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE

1. Insuring Agreement

a. We will pay those sums that the Insured become legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion investigate any "occurrence" and settle any claim or "suit that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and

9

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

(Docket Entry No. 1-2 at 11).

The insurance policy also contains Tennessee Commercial General Liability Endorsements

and the relevant additional exclusions from coverage that read as follows:

Exclusions of SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**This insurance does not apply to:**

1. **Punitive and Exemplary Damages, Fines, Penalties and Multiplication of Damages**
Punitive damages, exemplary damages, fines, penalties, treble damages or other increase in damages resulting from the multiplication of compensatory damages, in whatever form assessed. If a "suit" is brought against the insured seeking damages to which this insurance applies and punitive or exemplary damages, we will provide a defense to such "suit." However, we will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages. Provisions of this exclusion do not apply in any state where such exclusion is expressly prohibited by state law or insurance department regulation.
. . .

Id. at 71 (emphasis added).

In an endorsement change to the Founders' policy is the following that is an additional

exclusion to paragraph 2 of the policy on exclusions of coverage:

The following exclusion is added to paragraph 2, Exclusion of Section 1- Coverage A-Bodily Injury and Property Damage ...

This insurance does not apply to:

1. **Assault and/or Battery/Negligent Hiring**
**"Bodily injury," "property damage," or "personal and advertising injury" arising from:**
     (a) **assault and/or battery committed by any insured, any "employee" of an insured, or any other person;**

10

(b) **The failure to suppress or prevent assault and/or battery by any person in subparagraph 1.(a) above;**
(c) **The selling, serving or furnishing of alcoholic beverages which result in an assault and/or battery; or**
(d) **The negligent**:
        (1) **Employment;**
        (1) **Investigation;**
        (3) **Supervision;**
        (4) Reporting to the proper authorities, or failure to report; or
        (5) Retention

of or by a person for whom any insured is or ever was legally responsible and by whose conduct would be excluded by subparagraphs 1.(a) through 1.(c) above.

Id. at 87 (emphasis added).

The Bentley Defendants assert that their establishment, Bentley's House of Soul was an establishment serving alcoholic beverages at all times relevant to the underlying state court action. (Docket Entry No. 7, Answer and Counterclaim at ¶ 36). In their first amended complaint in the state court, the Bates Thompson plaintiffs added factual allegations that the Bentley Defendants' serving of liquor at their establishment was a cause in the decedent's death. (Docket Entry No. 21-1 at ¶ ¶ 21-22 and 25-27). Founders's insurance policy with the Bentley Defendants includes a Tennessee Liquor Liability Part that states in relevant part:

SECTION I – LIQUOR LIABILITY COVERAGE

1. Insuring Agreement

- We will pay those sums that an "insured" becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on an "insured" by reason of the selling, serving, or furnishing of any alcoholic beverage; and

- We will defend an "insured" against any "suit" seeking those damages.

. . . We have no duty to defend an "insured" against any "suit" seeking damages for "injury" to which this insurance does not apply. . . .

**Subject to <u>Exclusions to Coverage</u> (Paragraph 2 below), *this insurance applies to "injury" only if the "injury" occurs as a direct result of an "insured" selling, serving, or furnishing alcoholic beverages on the "insured premises" during the policy period.***

2. <u>Exclusions to Coverage</u>
**This insurance does not apply to: . . .**

*      *      *

**k. Assault and/or Battery**

**"Injury" arising from**:
      (1) assault and/or battery committed by any "insured," any "employee" of an "insured," or any other person;
      (2) The failure to suppress or prevent assault and/or battery by any person in subparagraph k.(1) above;
      (3) The selling, serving, or furnishing of alcoholic beverages which results in an assault and/or battery;
      or
      (4) **The negligent:**
            (a) **Employment;**
            (b) Investigation;
            (c) **Supervision;**
            (d) Reporting to the proper authorities, or failure to so report;
            or
            (e) Retention

of or by a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by subparagraphs k.(1) through k.(3) above.

<u>Id.</u> at 75, 76 (emphasis added).

### C. Conclusions of Law

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). A motion under Fed. R. Civ. P. 12(c) is reviewed under the same legal standards as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. <u>Lindsay v. Yates</u>, 498 F.3d 434, 437 n.5 (6th Cir. 2007). "For the purposes of a

12

motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JP Morgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007).

"A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Winget, 510 F.3d at 582 (citations omitted). "Thus, the court will grant the plaintiff's motion if (1) the admissions in the defendants' Answer entitle the plaintiff to judgment as a matter of law, and (2) the defendants' affirmative defenses do not require factual development." Crossville, Inc. v. Kemper Design Center, Inc., No. 2:09-0120, 2010 WL 2650731, *2 (M.D. Tenn. July 2, 2010). The Court may consider documents attached to and referenced in the pleadings on a motion for judgment on the pleadings without converting the motion into a motion for summary judgment. See Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008); Weaver v. Prudential Ins. Co. of America, 763 F. Supp.2d 930, 938 (M.D. Tenn. 2010). As discussed infra, to decide the duty to defend, the Court considers only the insurance policy and the allegations in the state court plaintiffs' first amended complaint[3].

### 1. The Declaratory Judgment Act

As a threshold issue, under the Declaratory Judgment Act, this Court possesses discretion whether to entertain a declaratory judgment action. "Since its inception, the Declaratory Judgment

---

[3] Under federal law, the amended complaint supercedes the original complaint Drake v. City of Detroit, Michigan, 266 Fed. Appx.444, 448 (6th Cir. 2006). The Tennessee Rules of Civil Procedure are parallel to the federal rules and as a general rule, Tennessee follow federal precedent on this federal rule. E.L. Billingsley and Oneida Farms, Inc. v.Escue, .No. E2000-00463-COA-R3-CV, 200 WL 1721664 at * 1 (Tenn. Ct. App. Nov. 17, 2000).

.

Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Ins. Co., 515 U.S. 277, 286 (1995). To determine whether to entertain jurisdiction in a declaratory judgment action, the district court should consider whether the judgment "will serve a useful purpose in clarifying and settling legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Casualty & Sur. Co. v. Sunshine Corp., 74 F.3d 685, 687 (6th Cir. 1996) (quoting Grand Trunk W. R.R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 325 (6th Cir. 1984). Under these two broad principles, the Court is to consider on whether to entertain such an action:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction;

(4) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for res judicata'; and

(5) whether there is an alternative remedy which is better or more effective.

Scottsdale Ins. Co. v Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (quoting Grand Trunk, 746 F.2d at 326 in an altered format).

As to the first factor of settling the controversy, Plaintiffs' complaint, the Defendants' answers and the parties' motion papers and responses seek a judicial determination of the insurance relationship of the Plaintiff and the Bentley Defendants. This controversy involves state insurance law issues, but those issues are not identified as part of the state court action. Although the parties disagree about whether factual ambiguities exist, Tennessee law is that insurance coverage and

14

exclusions are matters of law for the court to determine. Clark v. Sputniks, L.L.C., 368 S.W.3d 431, 436 (Tenn. 2012). Although Bates-Thompson plaintiffs are named Defendants in this action, there are not any claims presented or decided here that will decide Bates-Thompson's plaintiffs' claims in the state court. The factual determinations in a separate state court action involving the insured do not bind the insurance company on exclusions under the policy. Id. at 437. A prompt determination of Plaintiff's duty to defend needs to be decided early, and declaratory judgment actions deciding the duty to indemnify can be appropriate. Scottsdale Insurance, 513 F.3d at 557. In these circumstances, consideration of the first factor favors hearing Plaintiff's claims.

As to the clarification of the issues, this action involves only the relationship of the insured and insurer, and other factual aspects of the parties' claims and defenses arising out of the wrongful death are to be decided by the state court. This action provides a forum for a final resolution of whether Plaintiff has a contractual duty to defend and indemnify the Bentley Defendants in the state court action. The duty to defend is an important issue to decide promptly. Id.

For the third factor, consideration of comity with the state courts, the Court must consider the following factors on the issue of federalism between state and federal courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 814-15 (6th Cir. 2004) (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000).

As the Court considers this record, there is not any issue identified in this action, the resolution of Plaintiff's duty to defend, that would create friction with the state court in the Bates-

Thompson action, where Founders is not a party. The state court action involves only issues of tort liability of the named defendants. This action involves only insurance contract law issues that are not novel and do not involve any findings of fact. Under the rules for judicial determination of the duty to defend, the Court is to consider the state court plaintiffs' first amended complaint and the insurance contract about which there are not any factual disputes. The insurance law issues do not present novel issues of Tennessee law.

As to the duty to indemnify, Tennessee courts recognize a material distinction between these two duties that is relevant on this state court comity factor. Under Tennessee law, "[t]he duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact". Travelers Indem. Co. of America v. Moore & Associates, Inc., 216 S.W.3d 302, 30 (Tenn. 2007) (citing St. Paul Fire & Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn.1994)). Because the duty to indemnify requires a decision on the factual merits of the claims, federal courts in declaratory judgment actions have declined to rule on the duty of indemnification issue that was stayed until the conclusion of the underlying actions. See Trice, Geary & Myers, LLC v. CAMICO Mut. Ins. Co., Civil No. WDQ–09–2754, 2013 WL 680478 at * 3 (D.Md., Feb. 22, 2013) ("a declaration as to CAMICO's duty to indemnify would be 'premature,' and 'should instead be made after the underlying actions are resolved.'") and Nationwide Mut. Fire Ins. Co. v. McNulty, No. Civ.A. 96–7304, 1997 WL 805165 at *5 (E. D. Pa. Dec. 30, 1997) ("As already noted the duty-to-defend issue can be resolved with reference only to the pleadings and the insurance policy. **The indemnification issue, by contrast, requires the resolution of the merits of the underlying dispute. To grant the summary judgment motion of either the plaintiff or the defendants would require resolution of the issue**

16

**of whether McNulty committed a negligent act. Such a determination would be inappropriate in a declaratory judgment action at this time**. Resolution of those issues by summary judgment in the instant action carries with it the potential for prejudicial collateral estoppel in the underlying action. Furthermore, denial of both motions would result in a federal trial of the exact issues that are pending in the state proceeding. Hence, considerations of the relationship between state and federal courts, as well as considerations of efficiency, strongly counsel against resolution of this issue.") (emphasis added).

For the fourth factor of "procedural fencing" or a "race for *res judicata*," that factor applies where the plaintiff in the declaratory judgment action is not the "natural plaintiff" in the underlying controversy and files the action shortly before the "natural plaintiff" files an action. Scottsdale Insurance, 513 F.3d at 558. Here, the "natural plaintiff" filed the state court action first. As stated earlier, under Tennessee law, any determination here about the insured will not bind the state court. Clark, 368 S.W.3d at 437. Although the Bates-Thompson plaintiff are named Defendants in this action, with the Court's declination of any judgment on Plaintiff's duty to indemnify, there are not any claims presented that will decide Bates-Thompson's plaintiffs' claims in the state court. The factor favors entertaining this action on the duty to defend and/or indemnify.

As to the final factor of an alternative remedy, the parties do not identify such a remedy and the Court does not discern such an alternative.

Balancing all of the above factors, the Court deems consideration of this declaratory judgment action appropriate to decide the issue of Plaintiff's duty to defend, the Bentley Defendants in the state court action. Yet, as a matter of comity to the state courts, the Court declines to decide Plaintiff's duty of indemnification. Accordingly, this action should be stayed for consideration of

the Plaintiff's duty to indemnify until the conclusion of the state court proceedings. Thus, after this ruling, the Court will administratively close this action that may be reopened upon motion of any party.

## 2. Plaintiff's Duty to Defend

In a diversity action, the substantive law of the forum state controls under the forum's choice of law principles. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The insurance policy here was delivered in Tennessee to insure a Tennessee business. (Docket Entry No. 1-2 at 1). Absent a showing of an explicit choice-of-law provision in the policy, the Court concludes that Tennessee law applies here where the insurance policy was issued and delivered in Tennessee. Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998). As a general rule, Tennessee law construes any ambiguities in an insurance policy in favor of the insured. Griffin v. Shelter Mut. Ins. Co., 18 S.W.3d 195, 200 (Tenn. 2000). Yet, if the terms of the insurance policy are clear, the Court enforces insurance contracts "according to their plain terms" with the language construed in its "plain, ordinary and popular sense." Id. In a word, Tennessee courts do not create a new insurance contract for the parties. Id.

Under Tennessee law, the Court's inquiry on the insurer's duty to defend is confined to the allegations in the complaint in the action:

> If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage."

Drexel Chemical Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (quoting Glens Falls Ins. Co. v. Happy Day Laundry, Inc., 19784 T.V., 1989 WL 91082 (Tenn. Ct. App.

August 14, 1989) with other citations omitted). "In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are. . . ." St. Paul Fire and Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994) (citation omitted). The "[insured] has the burden of proving that its damages are covered by the terms of the policy; the [insurer] in turn, must establish the applicability of any exclusions on which it relies." Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006).

Here, the state court first amended complaint again alleges a "tort[i]uous assault" and that the shooting was the result of the deliberate and purposeful acts of the Unidentified John Doe Defendant who instigated the incident, left the building and returned and shot the deceased.(Docket Entry No. 21-1 at ¶ 16). Plaintiffs refer to these acts giving rise to the wrongful death "negligent", but also allege that the acts were "intentional." Id. at ¶ 29. The State court plaintiffs seek $10 million in punitive damages. Id. at 16. As quoted earlier in this Memorandum, Plaintiff's insurance policy with the Bentley Defendants expressly excludes personal injuries due to an "assault and battery," including in connection with liquor sales. Supra at 6-9. With the Bates Thompson's first amended complaint's factual allegations of premeditated conduct by the shooter, "intentional acts" and claims for $10 million in punitive damages, the Court concludes that the state court action involves a claim for an assault and battery or intentional tort that Founders' policy that expressly excludes, including in its liquor coverage.. Thus, the Court concludes that Founders does not have a contractual obligation to defend the Bentley Defendants in the state court action.

As to Defendants' contention that the policy's phrase "assault and battery" is ambiguous, in Atlantic Cas. Ins. Co. v. Cheyenne Country, No. 12-5638, 2013 WL 539436 (6th Cir. Feb. 13, 2013),

the Sixth Circuit affirmed the district court opinion, cited by the Bentley Defendants for this contention. There, despite the district court's observations about the ambiguity of this phrase, the factual allegations there were that the injuries were caused by a weapon and thus excluded under the policy. The Court concludes that whatever ambiguity may exist in legal definitions of the phrase, Tennessee law requires the Court to read insurance policy terms " 'according to their plain terms' with the language construed in its 'plain, ordinary and popular sense.'" Griffin, 18 S.W.3d at 200. The Court concludes that the allegations in the state court action satisfy the ordinary meaning of an intentional tort that qualifies for the exclusion of coverage provisions in the insurance policy issued by Plaintiff to the Bentley Defendants.

The Bentley Defendants next contend that Tennessee's concurrent cause doctrine should be applied, citing the state court plaintiffs' allegations and negligence claims against the Bentley Defendants as a cause of the deceased's wrongful death. Consistent with its earlier ruling, the Court will consider this contention only on the issue of Plaintiff's duty to defend the Bentley Defendants, not on Plaintiff's duty to indemnify.

Under the concurrent cause doctrine, "there is insurance coverage in a situation 'where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy.'" Clark v. Sputniks, LLC, 368 S.W. 3d 431, 441 (6th Cir. 2012); see also Atlantic Casualty, 2013 WL 539436, at *4 ("[t]he concurrent cause doctrine requir[es] an insurer to defend their insured if any alleged cause of injury would be covered by the insurance policy, regardless of how many excluded causes are also in the complaint.")

20

(citations omitted). Couch on Insurance Third Edition § 101:53 lists four factors for determining

what effect multiple causes for a loss have on insurance coverage:

> (1) whether at least one of the causes involved is covered under the policy and at
> least one cause is excluded from coverage;
>
> (2) the nature of the available coverage, i.e., whether the insurance is third party or
> first party coverage;
>
> (3) the time and space relationship of the causes;
>
> (4) whether the causes are "independent" in the sense that neither was produced
> by the other, or "dependent" in the sense that one was produced by, or at least
> contributed to the other.

§ 101.53. Generally, 7 Couch on Ins. § 101.53.

The Tennessee Court of Appeals considered this concurrent causation theory on an

insurer's contention that an assault and battery exemption in the commercial general liability

insurance policy excluded a nightclub's claim for a defense and indemnification for claims

following a fatal shooting. St. Paul Rein surace Co. Ltd. v. Williams, No.

W2003-00473-COA-R3-CV, 2004 WL 1908808 (Tenn. Ct. App. 2004). The insured argued that

the failure to maintain a safe premise was a concurrent cause of injury following the fatal attack,

but the Tennessee Court of Appeals disagreed:

> In the instant case, Appellant contends that the claim against Pure Passion-negligence in
> failing to provide security and a safe and secure premise-is a concurrent cause which is
> not excluded by the insurance policy. Relying on Watts and Planet Rock, Appellant
> argues that this Court should reverse the grant of summary judgment to the Appellee. We
> disagree. Unlike Watts and Planet Rock, this case involves a claim which is excluded by
> the insurance policy. In Watts, the nonexcluded causes were the placement of the pan of
> flammable substance, Crafton's failure to warn Watts of the presence of the flammable
> substance, and Crafton's negligence in dropping and kicking the burning substance.
> Watts, 811 S.W. 2d at 888. In Planet Rock, the nonexcluded cause was the insured's
> failure to render or make available the appropriate medical care. Planet Rock, 6 S.W.3d

21

at 489, 493. However, in this case, the claim alleged by Appellant against Pure Passion is excluded by the language of the assault and battery exclusion in the insurance policy.Such policy excludes from coverage claims arising out of "[a]ssault and [b]attery, whether caused by or at the instructions of, or at the direction of or negligence of the insured, his employees, patrons or any causes whatsoever...In this case, the Appellant's claim falls within the exclusions articulated in the insurance policy, and, therefore, the "concurrent causation doctrine" should not apply to Appellant's claim. For this reason, we affirm the grant of summary judgment in favor of Appellee."

2004 WL 1908808, at * 4. In Atlantic Casualty, the Sixth Circuit also rejected a similar concurrent cause contention stating that the policy there "explicitly excludes any injury that arises from the battery, regardless of the existence of concurrent causes." 2013 WL 539436 at * 4.

Here, the Founders' policy at issue contains an explicit exclusion of any claim, including negligence claims, "arising from" an assault and/or battery. The policy's language "arising from" would include any negligence claim in the state court action for Bentley Defendants' alleged failures or omissions to take necessary steps to make the premises safe where such omission caused the fatal shooting of the deceased. Applying St. Paul Reinsurance and Atlantic Casualty, the Court concludes that the concurrent cause doctrine does not create a legal duty for Founders to defend the Bentley Defendants in the state court action.

For the reasons stated above, the Court concludes that the Plaintiff's motion for judgment on the pleadings should be granted, but only as to the Plaintiff's duty to defend the state court action against the Bentley Defendants with all other coverage issues reserved. This ruling renders consideration of Plaintiff's motion to strike moot.

An appropriate order is filed herewith.

**ENTERED** this the ⁄⁄ day of July, 2013.

William J. Haynes, Jr.
Chief United States District Judge